DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LUK CLUTCH SYSTEMS, LLC,                )
                                        )       CASE NO. 5:09-CV-2415
                Plaintiff,              )
                                        )
        v.                              )       **MEMORANDUM OPINION**
                                        )       **AND ORDER**
CENTURY INDEMNITY COMPANY,              )
*et al.*,                               )
                                        )
                Defendants.             )

        In Plaintiff's amended complaint, LuK Clutch Systems, LLC ("LuK Clutch") seeks

declaratory judgment regarding the scope and extent of coverage provided by four insurance

policies insuring LuK Clutch with respect to asbestos-related bodily injury claims.[1]  ECF No. 43.

        Presently pending before the Court are the parties' cross-motions for summary judgment.

Defendant MTD Products, Inc.'s motion for summary judgment on the subjects of number of

occurrences, non-cumulation of liability and combined single occurrence limit (ECF No. 50) has

been joined by the three Defendant insurance companies (ECF No. 51).[2]  Plaintiff LuK Clutch

filed its own motion for summary judgment (ECF No. 60) and opposed Defendants' motion

(ECF No. 61).  Defendants opposed Plaintiff's motion for summary judgment and replied to

---

[1] Defendant MTD filed a cross-claim with respect to the original complaint, which was
subsequently voluntarily dismissed.  ECF No. 33.

[2] As more fully discussed below, even though Defendant MTD Products, Inc. is not an
insurance company, it is partially liable to the defendant insurance companies, through
indemnification agreements, on covered claims made by Plaintiff LuK Clutch.

(5:09-CV-2415)

Plaintiff's opposition to Defendants' motion for summary judgment (ECF No. 68).  Lastly,

Plaintiff filed a reply in support of its motion for summary judgment (ECF No. 71).

Defendants' position is that there is a single occurrence pursuant to the language of the

policies at issue and therefore, no coverage remains under the policies.  Plaintiff's position is that

there are multiple occurrences and a total of $24 million dollars of coverage remains under the

policies.

For the reasons that follow, Plaintiff's motion is granted in part and denied in part and

Defendants' motion is denied.  Specifically, the Court finds that there are multiple occurrences

pursuant to the language of the Policies and that the combined single limit provisions limit

Defendant insurance companies liability to a total of $12 million on all four policies ($6 million

on the 1985 policies and $6 million on the 1986 policies).  Given the finding of multiple

occurrences pursuant to the terms of all four policies, the Court does not need to resolve the non-

cumulation of liability provision.

## I.  FACTUAL BACKGROUND

### A.  The Controversy

LuK, Inc. ("LuK") was incorporated in Ohio in March 1977.  Defendant MTD Products,

Inc. ("MTD") was a joint owner of LuK until 1988.  LuK manufactured automotive clutches at

its plant in Wooster, Ohio, for a variety of automobile manufacturers, including Ford, Chrysler

and Volkswagen.  Before 1988, LuK used asbestos in some of the clutches it manufactured.

Plaintiff asserts that LuK used asbestos in certain clutches to meet customer specifications.  On

December 31, 2004, LuK merged with Plaintiff LuK Clutch.

2

(5:09-CV-2415)

The controversy in this case involves questions of coverage and scope of four product liability insurance policies (collectively, "Policies") which were obtained by Defendant MTD. Because MTD was an owner of LuK and shared a financial interest with LuK at the time, MTD secured an endorsement to the Policies which added LuK as an insured. While the relationship over time among Defendant MTD, Defendant insurance companies, and two reinsurance companies (not parties to this lawsuit) with respect to the Policies is complicated, the bottom line is that MTD is now partially responsible, through indemnification agreements with Defendant insurance companies, for any claims on the Policies paid by Defendant insurance companies to Plaintiff LuK Clutch.

Two of the four policies cover the period January 1, 1985 - January 1, 1986 (the "1985 Policies"), one by Defendant Insurance Company of North America ("INA") (Policy No. SCG GO 313278-A) and one by defendant INA Insurance Company of Ohio ("INA Ohio") (Policy No. SCG GO 313279-1). The other two policies cover the period January 1, 1986 - January 1, 1987 (the "1986 Policies"), one by INA (Policy No. SCG GO 854488-8) and one by INA Ohio (Policy No. SCG GO 854489-A). Each of the Policies has a $5,500,000 limit for any single occurrence, and a $6,000,000 aggregate.

LuK Clutch is a defendant in over 750 product liability personal injury claims. The claimants allege they suffered personal injury from exposure to asbestos in automotive clutch components manufactured and sold by LuK Clutch's predecessor, LuK. LuK Clutch has

3

(5:09-CV-2415)

incurred, and continues to incur, millions of dollars in costs defending those claims and seeks

coverage for these costs from Defendants INA and INA Ohio under the Policies.[3]

Defendant insurance companies have already made some payments to LuK Clutch under

the Policies for claims made as a result of the asbestos litigation.  The controversy before the

Court concerns whether any coverage remains under the Policies.  To resolve this conflict, the

parties ask the Court to interpret certain provisions of the Policies in order to determine if any

coverage remains.

**B.  The Relevant Policy Provisions**

The relevant policy provisions, in the order the provisions appear in the Policies, are

written in pertinent part as follows[4]:

INSURING AGREEMENT

I.      COVERAGE

The Company agrees to pay on behalf of the Insured all sums which the
Insured shall become legally obligated by law or assumed under contract to
pay as damages because of Personal Injury or Property Damage arising out
of Products/Complete Operations Liability (as defined herein) and caused by
or arising out of each occurrence happening within the United States, . . . .

II.     LIMITS OF LIABILITY

(a)     $5,500,000 combined single limit per occurrence

---

[3] LuK Clutch and Defendant Century Indemnity Company ("Century") (successor to INA and INA Ohio) entered into a Settlement Agreement agreeing to pay 70% of LuK Clutch's ongoing asbestos related defense costs up to the limits of the Policies.

[4] Unless otherwise indicated, the parties concede that the policy provisions are identical in all four policies.

(5:09-CV-2415)

       (b)     $6,000,000 combined single limit annual aggregate

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

Bodily Injury Liability and Property Damage Liability:

1.      The limit of liability stated above as applicable to "each occurrence" is the total limit of the Company's liability for all damages including damages for care and loss of services because of bodily injury and property damage sustained by one or more persons or organizations as a result of any one occurrence.
. . . .

3.      For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

. . . .


## OTHER DEFINITIONS

. . . .

C.      "Occurrence" means an accident, including continuous or repeated exposure to conditions, which happens during the policy period and which result in personal injury or property damage, neither expected nor intended from the standpoint of the insured.
. . . .

F.      "Products Liability" means liability arising out of products hazard and/or completed operations hazard.

      1.      "Products Hazard" means liability arising out of goods or products manufactured, sold, handled or distributed by the Insured or by others trading under the Insured's name (hereinafter called "the Insured's products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Insured or by others

(5:09-CV-2415)

> trading under the Insured's name and if such occurrence occurs away from premises owned, rented, or controlled by the Insured; . . . .

. . . .

CONDITIONS

. . . .

> K.   Noncumulation of Liability - Same Occurrence
>
> If the same occurrence gives rise personal injury or property damage liability that occurs partly before and partly within any one annual period, the limit of liability applicable to each such occurrence, shall be reduced by the amount of all payments made by the Company with respect to  such occurrence, either under a previous policy or policies issued by the Company of which this is a replacement, or under this policy with respect to previous annual periods thereof.

Section L is as written in the 1985 INA Policy that references the 1985 INA Ohio Policy:

> L.   Retrospective Adjustment
>         . . . .
>
> The Limits of Liability under this policy shall be inclusive of and not in addition to the limits of liability provided under policy number SCG GO 313279-1.  And in no event can total limits under this policy and policy number SCG GO 313279-1 be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

Section M is as written in the 1985 INA Ohio Policy that references the 1985 INA Policy:

> M.
>
> The Limits of Liability under this policy shall be inclusive of and not in addition to the limits of liability provided under policy number SCG GO 313278-A.  And in no event can total limits under this policy and policy number SCG GO 313278-A be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

Section L is as written in the 1986 INA Policy that references the 1986 INA Ohio Policy:

6

(5:09-CV-2415)

      L.     Retrospective Adjustment
           . . . .

The Limits of Liability under this policy shall be inclusive of and not in addition to the limit of liability provided under policy number SCG GO 854489-A.  And in no event can total limits under this policy and policy number SCG GO 854489-A be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

Section M is as written in the 1986 INA Ohio Policy that references the 1986 INA Policy:

M.

The Limits of Liability under this policy shall be inclusive of and not in addition to the limits of liability provided under policy number SCG GO 854488-8.  And in no event can total limits under this policy and policy number SCG GO 854488-8 be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

## II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(5:09-CV-2415)

(1986).  General averments or conclusory allegations of an affidavit do not create specific fact

disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S.

871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion

for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid*

*v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*,

747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004)

(noting that a so-called "sham" affidavit need not be disregarded if there is "independent

evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff.'"  *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson v. Liberty Lobby*, 477

U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is

the need for a trial – whether, in other words, there are genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party."  *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52;

*see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he

conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material

fact that preclude the grant of summary judgment").

8

(5:09-CV-2415)

"The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (*citing John v. State of La. (Bd. of Tr. for State Coll. & Univ.)*, 757 F.2d 698, 705 (5th Cir.1985)).  In fact, the standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  The fact that both parties have moved for summary judgment does not mean that the Court must rule in favor of one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *See Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948) (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists).

The Court reviews each party's motion separately and determines whether a judgment may be entered in accordance with the standards of Rule 56.  If, however, there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.  Both motions must be denied if the Court finds that there is a genuine dispute as to any material fact.

### III.  Applicable Law

#### A.  Ohio Law Applies

In a diversity case, the federal court applies the law of the forum state, including choice of law provisions.  *Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 892 (6th Cir. 1989).  None of the Policies at issue contain a choice of law provision.  It is undisputed, however, that the Policies

9

(5:09-CV-2415)

were issued to an Ohio company (MTD), an Ohio company (LuK) was added as an insured, the Policies were delivered in Ohio and the subject matter of the contract was in Ohio. Therefore, Ohio law applies. *See Spengler v. ADT Sec. Services, Inc.*, 505 F.3d 456, 457 (6th Cir. 2007) (citing Restatement (Second) of Conflict of Laws, § 188(2) (1971)); *see also Celina Mut. Ins. Co. v. Sadler*, 6 Ohio App.2d 161, 165-166, 217 N.E.2d 255 (Ohio Ct. App. 1966) (noting that an Ohio-issued policy is governed by Ohio law unless the provisions of the policy dictate otherwise). Furthermore, neither party has challenged the presumption that Ohio law applies in this instance.

### B. Interpreting Insurance Policies Pursuant to Ohio Law

The Sixth Circuit recently quoted extensively from an Ohio Court of Appeals case that summarized the procedure to follow when interpreting insurance policies under Ohio law. *Ramsey v. Allstate Ins. Co.*, 2011 WL 1058887 at *3 (6th Cir. 2011). That procedure is as follows:

> {¶ 17} An insurance policy is a contract, and its interpretation is a matter of law for the court. *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. The coverage under an insurance policy is determined by construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380. Contract terms are to be given their plain and ordinary meaning, *Dunson v. Home–Owners Ins. Co.*, 3d Dist. No. 5–09–37, 2010-Ohio-1928, 2010 WL 1740928, ¶ 13, and "[w]hen the contract is clear and unambiguous, the court 'may look no further than the four corners of the insurance policy to find the intent of the parties.' " *Fed. Ins. Co. v. Executive Coach Luxury Travel, Inc.*, 3d Dist. Nos. 1–09–17 and 1–09–18, 2009-Ohio-5910, 2009 WL 3720556, ¶ 23, quoting *McDaniel v. Rollins*, 3d Dist. No. 1–04–82, 2005-Ohio-3079, 2005 WL 1421754, ¶ 32.

> {¶ 18} However, when a portion of an insurance contract is reasonably susceptible of more than one interpretation, it will be strictly construed against the

10

(5:09-CV-2415)

insurer and in favor of the insured.  *Niemeyer v. W. Res. Mut. Cas. Co.*, 3d Dist. No. 12–09–03, 2010-Ohio-1710, 2010 WL 1531371, ¶ 9, citing *King*, 35 Ohio St.3d 208, 519 N.E.2d 1380, at syllabus.   Nevertheless, this rule of insurance-policy interpretation will not be applied in an unreasonable manner. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 14.

{¶ 19} Furthermore, when an insurance contract contains exceptions to coverage, there is a presumption that all coverage applies unless it is clearly excluded in the contract.  *Bosserman Aviation Equip. v. U.S. Liab. Ins. Co.*, 183 Ohio App.3d 29, 2009-Ohio-2526, 915 N.E.2d 687, ¶ 11, citing *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 549, 757 N.E.2d 329.  "Accordingly, in order for an insurer to defeat coverage through a clause in the insurance contract, it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction is the only one that can be fairly placed upon the language." Id.

{¶ 20} The party seeking to recover under an insurance policy bears the burden of proof to demonstrate that the policy provides coverage for the particular loss.  *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273, 719 N.E.2d 955.  However, "when an insurer denies liability coverage based upon a policy exclusion, the insurer bears the burden of demonstrating the applicability of the exclusion." *Beaverdam Contracting, Inc. v. Erie Ins. Co.*, 3d Dist. No. 1–08–17, 2008-Ohio-4953, 2008 WL 4378153, ¶ 19, citing *Continental Ins. Co. v. Louis Marx & Co., Inc.* (1980), 64 Ohio St.2d 399, 18 O.O.3d 539, 415 N.E.2d 315, syllabus.

*Allstate Ins. Co. v. Eyster*, 189 Ohio App.3d 640, 939 N.E.2d 1274 at ¶¶ 17-20 (Ohio Ct. App. 2010).

## IV. <u>Analysis</u>

The parties' cross-motions for summary judgment present the Court with "both sides of the coin" concerning three issues.  The three main issues the Court needs to resolve are:

1) Determine the number of "occurrences" as that term is used in the Policies, *i.e*, Defendants' position of a single occurrence (Plaintiff's decision to use asbestos) or Plaintiff's position of multiple occurrences (each claimant's exposure to asbestos).

2) What is the effect of the "Non-Cumulation of Liability-Same Occurrence" provision as it relates to the 1985 and 1986 periods.

11

(5:09-CV-2415)

> 3) What is the effect of the "Combined Single Limit" provisions for the two policies issued during each period, *i.e.*, 1985 and 1986.

If the Court determines that there were multiple occurrences, then it is undisputed by the parties that it does not need to address the second issue.[5]  Irrespective of its finding on the number of occurrences issue, the Court needs to resolve the last issue.  Thus, while not dispositive, the Court's resolution of the first issue (the number of occurrences) charts the course for the remainder of this opinion.  Accordingly, the Court will first settle the "occurrence" issue.

**A.  <u>Occurrence</u>**

The parties hotly contest the number of occurrences in this case and rightly so as it is the critical issue before the Court.  They direct the Court to a multitude of decisions from numerous state and federal jurisdictions.  Each case presents varying results, but none of which, however, is directly on point.  For example, some cases have the same definition of occurrence but different facts and some cases have a different definition of occurrence and similar facts.  The end result is that none of the decisions present binding authority, but at best present some persuasive analysis.  In the Court's view, therefore, the specific language of the Policies, coupled with the specific facts of this case and Ohio law concerning the interpretation of insurance policies controls the analysis.[6]

---

[5]  Counsel for Defendant insurance companies stated, "If the Court rules that there are multiple occurrences here, then, as counsel for Luk Clutch stated, the non-cumulation of liability provision does not apply.  It only applies as to a single occurrence."  ECF No. 79 at 13-14 (Transcript from May 18, 2011 Status Conference).

[6]  "[W]hile we recognize that consistent interpretation of standardized terms in insurance contracts promotes clear understanding of future contracts, it would be foolish to state as a matter

(continued...)

(5:09-CV-2415)

Before the Court declares whether this matter involves a single occurrence or multiple occurrences, it must first determine what an "occurrence" is pursuant to the specific language of the Policies.

### 1. What constitutes an "occurrence"

The Policies define the term "occurrence" as follows:

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which happens during the policy period and which result in personal injury or property damage, neither expected nor intended from the standpoint of the insured.

ECF No. 62-4 at 31. Under Ohio law, contract terms are to be given their plain and ordinary meaning. *Allstate Ins. Co. v. Eyster*, 939 N.E.2d at ¶ 17.

In the instant case, the claimants' alleged personal injuries stem from the exposure to asbestos from LuK Clutch's product. Defendants argue that the occurrence in this case was LuK Clutch's initial decision to use asbestos in its products, which Luk Clutch decided in the late 1970s. When looking at the plain language of the Policies, the Court finds it difficult to characterize a decision to use asbestos in clutch facings as a condition to which the claimants were exposed. The more appropriate characterization is that the "conditions" to which the claimants were exposed were the asbestos fibers from LuK Clutch's asbestos-containing products. The Court finds that this is the more reasonable and unstrained reading of the term "occurrence."

---

[6](...continued)
of law that the word 'occurrence' has the same meaning in all insurance contracts." *London Mkt. Insurers v. Superior Court*, 146 Cal.App4th 648, 53 Cal.Rptr.3d 154, 161 (2007) (citation and internal quotations and ellipses omitted).

13

(5:09-CV-2415)

Further, the definition of the term "occurrence" includes the clause, "which happens during the policy period and which result in personal injury." Clearly a decision made in the 1970s did not happen during either the 1985 or 1986 policy periods. It is undisputed, however, that the claimants' exposure to LuK Clutch's products occurred during the relevant policy periods. It is also possible that this exposure "result[ed] in personal injury" to the claimant. Rather, it is impossible that a decision made in the 1970s took place in 1985 or 1986 *and* resulted in personal injury.

Further bolstering the Court's interpretation of what constitutes an occurrence is the Coverage paragraph contained in the Policies. The Coverage paragraph of the Insuring Agreement Section in the Policies states in pertinent part, as follows:

> The Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated by law or assumed under contract to pay as damages because of **Personal Injury** or Property Damage arising out of **Products**/Complete Operations **Liability (as defined herein)** and caused by or arising out of each occurrence happening within the United States, . . . .

The term Products Liability is defined in relevant part as follows:

> F.      "Products Liability" means liability arising out of products hazard and/or completed operations hazard.
>
>    1.      "Products Hazard" means liability arising out of goods or products manufactured, sold, handled or distributed by the Insured or by others trading under the Insured's name (hereinafter called "the Insured's products") **if the occurrence occurs after possession of such goods or products has been relinquished to others by the Insured** or by others trading under the Insured's name **and** if such occurrence occurs away from premises owned, rented, or controlled by the Insured; . . . .

ECF No. 62-4 at 29 & 31 (emphasis added).

14

(5:09-CV-2415)

Interpreting these terms of coverage and definitions indicates to the Court that the Policies will "pay out" only for personal injury resulting from products liability "if the occurrence occurs after possession of such goods or products has been relinquished to others by the Insured."  If the occurrence is as Defendants propose—that the decision to use asbestos in products was the occurrence—then that occurrence would not be covered under the Policies because that occurrence occurred BEFORE the possession of the goods had been relinquished to others.  Defendants' occurrence argument does not hold water because it is incongruent with the coverage term of its own Policies.  Defendants have already paid out millions of dollars to Luk Clutch in a Settlement Agreement for a covered (as they argue) "occurrence," LuK Clutch's asbestos-related bodily injury claims (the same issue here), and that those payments exhausted the limits of the Policies.  Having paid LuK Clutch's claim as a covered claim, Defendants' position on the meaning of the term "occurrence" fails as it relates to time, *i.e.*, the occurrence could not occur before the product ever left LuK Clutch's possession and at the same time be considered a covered claim under the language of the Policies.[7]

The following is a passage from Defendants' combined opposition to Plaintiff's motion for summary judgment and reply in support of its own motion for summary judgment and is just one example showing that Defendants treated LuK Clutch's claim as one that is covered under the Policies:

---

[7]  While the language of the clause at issue and the facts of the case are different, the Sixth Circuit's reasoning, albeit not binding, in *Babcox & Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co*, 53 R.3d 762, 765-67 (6th Cir. 1995), is persuasive concerning this Court's analysis.

15

(5:09-CV-2415)

> Rather, Defendants' consistent position throughout this litigation has been that: (i) all payments to LuK were for a single "occurrence" — LuK's asbestos-related bodily injury claims . . . .

ECF No. 68 at 23.  Defendants' statement shows that it treated LuK Clutch's "asbestos-related bodily injury claims" as claims that are covered under the Policies.  Therefore, Defendants' position that the occurrence was LuK Clutch's decision to use asbestos in its products fails because it is inconsistent with the term of Coverage as defined in the Policies.

Accordingly, the Court concludes that the only reasonable reading of the Policies in the context of the facts before it is that the term "occurrence" means the exposure to asbestos fibers from LuK Clutch's products during the 1985 or 1986 policy periods that resulted in bodily injury, not LuK Clutch's decision to manufacture asbestos-containing products.

### 2.  The number of occurrences

Having determined in the context of the instant case that the term "occurrence" means the exposure to asbestos fibers from LuK Clutch's products during the 1985 or 1986 policy periods that resulted in bodily injury, the Court must next determine the number of occurrences, *i.e.*, a single occurrence or multiple occurrences.

Defendants argue that the following "Limits of Liability" terms of the Policies require the Court to determine that a single occurrence applies to LuK Clutch's claim for coverage under the Policies.

II.     LIMITS OF LIABILITY

(a)     $5,500,000 combined single limit per occurrence

(b)     $6,000,000 combined single limit annual aggregate

16

(5:09-CV-2415)

> Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:
>
> Bodily Injury Liability and Property Damage Liability:
>
> 1.      The limit of liability stated above as applicable to "each occurrence" is the total limit of the Company's liability for all damages including damages for care and loss of services because of bodily injury and property damage sustained by one or more persons or organizations as a result of any one occurrence.
> . . . .
>
> 3.      For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

Moreover, Defendants argue that pursuant to the "cause test" under Ohio law, the underlying cause that resulted in the claimants' personal injuries was LuK Clutch's decision to use asbestos in its products. Thus, there is but a single occurrence. The Court is not persuaded by Defendants' argument.

One of the decisions Defendants cite in support of their position is *Parker Hannifin Corp. v. Steadfast Ins. Co.*, 445 F.Supp.2d 827 (N.D. Ohio 2006). In that case, the court applied the cause test and found that multiple claims of damages caused by defective parts constituted a single occurrence—the manufacture of those parts. The *Parker Hannifin* case is distinguishable for several reasons, but two significant distinctions persuade the Court to not find a single occurrence in the instant case.

First, in *Parker Hannifin*, determining the number of occurrences concerned the issue of a deductible, not coverage as in this case. The most glaring distinguishing fact is, however, that

17

(5:09-CV-2415)

even though there were numerous deliveries of defective gaskets, all of the deliveries were made to a single customer. Therefore, the single customer's damages arose out of continuous or repeated exposure to the same defective product at the same facility. In contrast, the matter before this Court involves hundreds of different customers around the country who were exposed to the asbestos-laden product in inevitably different situations. The facts of *Parker Hannifin* led the court to conclude there was but a single occurrence, whereas the facts of this case lead the Court to find multiple occurrences.

Similarly, in *Libbey, Inc. v. Factory Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 45160 (N.D. Ohio 2007) cited by Defendants, the court found multiple incidents were caused by a single occurrence as that determination concerned a deductible. Again, the defective product was delivered to and used by a single customer that, after continued and repeated exposure to the defective product, experienced damage as a result. Further, the policy at issue in *Libbey* did not define the term "occurrence." Because there was but one customer that used the defective product in the same manner over time, the court concluded the underlying cause of Libbey's losses was the same: the use of the defective product. That is not the situation in the instant matter. The Court does not find the analysis in *Libbey* persuasive given the significant factual differences.

Looking to the language of the Policies, the facts of this case and applying the cause test, the Court finds that the underlying cause that resulted in the claimants' personal injuries is each individual claimants' continued and repeated exposure to LuK Clutch's asbestos-containing

18

(5:09-CV-2415)

product.[8] Thus, each claimant's exposure is a separate occurrence. Under the Policies' terms, however, each individual exposure, *i.e.*, the continuous and repeated exposure, to LuK Clutch's asbestos-containing product by any one claimant is considered a single occurrence.

Accordingly, the Court concludes that the only reasonable reading of the Policies in the context of the facts before it is that, for the purposes of Defendants' limit of liability, the asbestos claims constitute multiple occurrences.

Because the Court determines that there were multiple occurrences, it does not need to address the second issue.[9] It will therefore proceed to resolve the last issue: What is the effect of the "Combined Single Limit" provisions for the two policies issued during each period, *i.e.*, 1985 and 1986.

**B.  <u>The Combined Single Limit Provisions for the 1985 and 1986 Policy Periods</u>**

LuK Clutch argues that it is entitled to a total of $24 million worth of coverage under the Policies, *i.e.*, $6 million of Combined Single Limit annual aggregate coverage under each of the four policies. Defendants' position on the Combined Single Limit Provisions flows from their argument that there is a single occurrence; therefore, they argue that no coverage remains available to LuK Clutch under the Policies. Given that the Court has found multiple occurrences

---

[8] The analysis by the Ohio Appellate Court, First District, in *Cincinnati Ins. Co. v. ACE INA Holdings Inc.*, 175 Ohio App.3d 266, 886 N.E.2d 876, 885-88 (Ohio Ct. App. 2007), while not binding, provides persuasive reasoning in the context of resolving the single or multiple occurrence issue in the instant matter.

[9] *See supra* note 4.

(5:09-CV-2415)

in this matter, Defendants' position is incorrect.  Further, upon review of the relevant terms of

the Policies, LuK Clutch's position is also incorrect.

As described above, there are two 1985 Policies and two 1986 Policies.  The two 1985

Policies reference each other and limit the combined coverage under both policies to a total of

$5.5 million per occurrence and $6 million aggregate.  Section L from the 1985 INA Policy that

references the 1985 INA Ohio Policy is as follows:

> L.    Retrospective Adjustment
>        . . . .
>
> The Limits of Liability under this policy shall be inclusive of and not in addition
> to the limits of liability provided under policy number SCG GO 313279-1.  And
> in no event can total limits under this policy and policy number SCG GO 313279-
> 1 be combined to exceed the $5,500,000 Combined Single Limit per occurrence;
> $6,000,000 Combined Single Limit annual aggregate.

Section M from the 1985 INA Ohio Policy that references the 1985 INA Policy is as follows:

> M.
>
> The Limits of Liability under this policy shall be inclusive of and not in addition
> to the limits of liability provided under policy number SCG GO 313278-A.  And
> in no event can total limits under this policy and policy number SCG GO 313278-
> A be combined to exceed the $5,500,000 Combined Single Limit per occurrence;
> $6,000,000 Combined Single Limit annual aggregate.

The same is true for the 1986 Policies.  Section L from the 1986 INA Policy that

references the 1986 INA Ohio Policy is as follows:

> L.    Retrospective Adjustment
>        . . . .
>
> The Limits of Liability under this policy shall be inclusive of and not in addition
> to the limit of liability provided under policy number SCG GO 854489-A.  And in
> no event can total limits under this policy and policy number SCG GO 854489-A

20

(5:09-CV-2415)

           be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

Lastly, Section M from the 1986 INA Ohio Policy that references the 1986 INA Policy is as follows:

           M.

           The Limits of Liability under this policy shall be inclusive of and not in addition to the limits of liability provided under policy number SCG GO 854488-8.  And in no event can total limits under this policy and policy number SCG GO 854488-8 be combined to exceed the $5,500,000 Combined Single Limit per occurrence; $6,000,000 Combined Single Limit annual aggregate.

Therefore, according to the terms of the Policies, the facts of this case and having found multiple occurrences, LuK Clutch is only entitled to a total of $12 million worth of coverage under all of the Policies.[10]

           Accordingly, the Court finds that the Combined Single Limit provisions limit Defendants' liability to a total of $12 million under all four policies ($6 million on the 1985 Policies and $6 million on the 1986 Policies).

## V.  Conclusion

           For the reasons discussed herein, Plaintiff's motion (ECF No. 60) is GRANTED in part and DENIED in part and Defendants' motion (ECF No. 50) is DENIED.  Specifically, the Court finds that there are multiple occurrences pursuant to the language of the Policies and that the

---

      [10]  Neither of the motions for summary judgment nor the amended complaint ask the Court to determine the amount of coverage that remains available to LuK Clutch.  The Court's holding is limited to the total amount available under the Policies regardless of what amount has or has not already been provided by Defendant insurance companies to LuK Clutch.

(5:09-CV-2415)

combined single limit provisions limit Defendant insurance companies liability to a total of $12

million on all four policies ($6 million on the 1985 Policies and $6 million on the 1986 Policies).

     Furthermore, the Court orders the parties to submit jointly or otherwise, a statement

detailing what issues remain, if any, upon which the Court must rule.  This statement(s) shall be

filed no later than August 12, 2011.

     IT IS SO ORDERED.

  July 26, 2011                                    *s/ David D. Dowd, Jr.*       
Date                                        David D. Dowd, Jr.
                                              U.S. District Judge

22